# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

TANIKO SMITH,
ELSIE SPELL,

       Plaintiffs,

v.

ISIDRO BACA, et al.,

       Defendants.

Case No.: 3:16-cv-00456-MMD-WGC

**Report & Recommendation of
United States Magistrate Judge**

Re: ECF Nos. 40, 44

      This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

      Before the court is Defendants' Motion for Summary Judgment. (ECF Nos. 40, 41-1.) Plaintiffs filed a response and Cross-Motion for Summary Judgment. (ECF Nos. 43, 43-1, 44, 44-1.)[1] Defendants filed a reply in support of their motion (ECF No. 46), and response to Plaintiffs motion (ECF No. 48). Plaintiffs filed a reply in support of their motion. (ECF No. 50.)

      After a thorough review, it is recommended that both motions be denied., except that Defendants' motion should be granted insofar as Plaintiffs seek to recover monetary damages against Defendants in their official capacities.

## I. BACKGROUND

      Plaintiff Taniko Smith is an inmate in custody of the Nevada Department of Corrections (NDOV). Plaintiff Elsie Spell was previously employed as a caseworker at NDOC's High Desert

---

[1] The documents are identical but were docketed separately by the Clerk's Office.

State Prison (HDSP), and is now married to Smith. Plaintiffs, who are proceeding pro se, have brought this action under 42 U.S.C. § 1983. (Am. Compl., ECF No. 16.) On screening, Plaintiffs were allowed to proceed with a Fourteenth Amendment equal protection claim against defendants Northern Nevada Correctional Center's (NNCC) Warden Isidro Baca, NDOC Director James Dzurenda, and John Doe NDOC Deputy Director. (ECF No. 27.)[2] The amended complaint alleges that Defendants denied Spell visitation with Smith, and violated their equal protection rights because they treated Smith differently than similarly situated inmates and Spell differently than similarly situated former NDOC employees who were allowed visitation privileges.  (ECF No. 16.)

Defendants now move for summary judgment, arguing: (1) Plaintiffs have not established that they have been treated differently than similarly situated individuals; (2) the determination to deny Spell's visitation was reasonably based on Spell's prior relationship with Smith during her employment with the NDOC; (3) the "class-of-one" theory of equal protection liability should not apply here because Baca was exercising his discretionary authority when he denied Spell's visitation application;  (4) they are entitled to qualified immunity because it was not clearly established that denial of visitation under these circumstances violates the equal protection clause; and (5) Defendants cannot be sued in their official capacity for damages.

Plaintiffs argue: (1) Defendants are not entitled to qualified immunity; and (2) in denying them visitation, Defendants acted arbitrarily and treated Plaintiffs differently than similarly situated individuals without a rational penological justification.

///

---

[2] Plaintiffs have not timely moved to substitute a named defendant in for the John Doe deputy director; therefore, this defendant should be dismissed without prejudice.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

3

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

///

4

# III. DISCUSSION

## A. Factual Background

Plaintiff Smith is an inmate incarcerated within NDOC. Plaintiff Spell was previously employed as a Correctional Caseworker Specialist III with NDOC. According to an NDOC Investigation Detail Report (IR-2015-HDSP-003029), on September 7, 2015, a former inmate called High Desert State Prison (HDSP) claiming to have been in a relationship with Spell. (ECF No. 44-1 at 2.) According to Plaintiffs, the former inmate also reported that Spell was in a relationship with Smith. An investigation commenced the following day—September 8, 2015— by the Inspector General's Office.(*Id.*)  Spell resigned her position that same day, and claims she did so for personal reasons. (ECF No. 44-1 at 73.)[3] Spell asserts that she was not notified before her resignation that she was under investigation. (Spell Affidavit, ECF No. 44-1 at 93.) The investigation was never completed. (Baca Decl., ECF No. 41 at 2 ¶11.) Plaintiff was transferred to NNCC on September 9, 2015. (ECF No. 44 at 5.) It is undisputed that neither Spell nor Smith were ever charged regarding the allegations of the investigation.

Administrative Regulation (AR) 719 governs visitation within NDOC's facilities. (*See* ECF No. 44-1 at 17-22.) Concerning visits with former employees, it provides: "Current and former employees of [NDOC] may request visiting privileges with an inmate on an individual basis. The request will be submitted to the Warden for initial consideration and recommendations, and through the appropriate Deputy Director to the Office of the Director for final approval." (*Id.* at 22.) NDOC Operational Procedure (OP) 714 is consistent with this provision of AR 719 regarding visitation by former employees. (ECF No. 44-1 at 24, OP 714.02.4.)

---

[3] Plaintiffs' briefing asserts, and Defendants have not disputed, that she was not at work on September 7, 2015, and was at a training away from her regular place of employment on September 8, 2015.

Plaintiff Smith sent visiting applications to Spell in December 2015 and January 2016, and Spell sent in a visiting application. (ECF No. 44 at 6; ECF No. 44-1 at 26.) Baca denied the visitation request on February 26, 2016,  because Spell was a former NDOC employee. (ECF No. 44-1 at 27.) On March 9, 2016, Spell sent a letter to the Director's Office appealing that decision. She asserted that she was being discriminated against by not being allowed to visit Smith because she is a former employee, stating that other former employees had been approved to visit inmates. She indicated she had no criminal history, she posed no threat to safety or security of the institution, and there was no other reason she should be denied visitation with Smith. (ECF No. 44-2 at 29.)

She  also sent correspondence to the governor's office raising her concerns about the denial of visitation with Smith, and the governor's office responded on March 9, 2016, advising that her correspondence had been forwarded to the interim director of NDOC. (ECF No. 44-1 at 30.) On April 5, 2016, she sent an email to Sarina Rupert in the warden's office stating she had not heard back regarding her appeal of the visitation decision. She also indicated she spoke to Cynthia Keller who told her that she would never be able to visit an inmate as a former employee unless they were married. She reiterated that she did not pose a threat to safety and security of the department, and that other former employees had been approved for visits with inmates who are not married. (ECF No. 44-1 at 31.) She followed up on her email on May 9, 2016, and Ms. Rupert responded on April 20, 2016, advising that she could submit an appeal to Warden Baca. (*Id.* at 32.) That same date, Spell submitted her appeal letter to Warden Baca. She reiterated her claims of discrimination, and asserted the prison was violating their equal protection rights because other former employees were allowed to visit inmates when they were not married. (ECF No. 44-1 at 33.)

There is a visitation appeal memorandum denying Spell's appeal signed by Baca on May 10, 2016, and stating: "Ms. Spell was involved with Inmate Smith when she was a CCS III at

1  HDSP. IR # IR-2015-HDSP-3029." It was signed and denied by the deputy director and Director

2  Dzurenda.(ECF No. 44-1 at 49; ECF No. 41-1 at 6, 23.) Spell claims she did not receive this

3  response from Baca by the time this complaint was originally filed on July 29, 2016. (ECF No. 44

4  at 8.) This is consistent with the allegations of the complaint. (ECF No. 5 at 7 ¶ 26.)

5       Spell and Smith were married on August 6, 2016, at NNCC. (*See* ECF No. 44-1 at 54.)[4]

6  According to Plaintiffs, another visiting application was sent in along with the marriage certificate

7  on August 19, 2016. (ECF No. 44 at 9.)

8       Baca denied the visitation application on August 24, 2016, citing Spell's past record.

9  (ECF No. 44-1 at 45.) Spell claims that on September 1, 2016, she spoke with Kathy Swain, who

10  advised her that the deputy director and director had denied her prior visitation request because

11  she was a former employee, and that she should go through the appeal process. (ECF No. 44 at 9;

12  ECF No. 44-1 at 54.)  Spell sent a letter appealing that determination to Warden Baca that same

13  day. She stated she did not have a previous record. She informed Baca that she and Smith were

14  married and sought reconsideration of the decision to deny visitation, stating again that other

15  former employees were allowed to visit inmates. (ECF No. 44-1 at 46; ECF No. 41-1 at 12.)

16       There is a visitation appeal memorandum signed by Baca on September 19, 2016, denying

17  the appeal, stating: "Ms. Spell resigned pending investigation that she was involved in a

18  relationship with Inmate Smith while she was a Caseworker IR 2015 HDSP2039." The deputy

19  director signed the memorandum on September 21, 2016, stating: "compromised ex-caseworker

20

21

---

22  [4] It is unclear how Spell and Smith were married at NNCC when Baca had denied the visitation
   request. Plaintiffs assert that it was done with permission of the deputy director, but also assert

23  that Baca failed to pass the marriage request along to the deputy director. Although the court is
   confused about how the marriage occurred, it is apparently immaterial as Defendants do not
   dispute that Smith and Spell were married at NNCC in August of 2016.

III." Director Dzurenda signed the memorandum denying the appeal on September 22, 2016. (ECF No. 44-1 at 48; ECF No. 41-1 at 5, 16.)

Spell sent in another visitation application in January of 2018. (ECF No. 44 at 9-10.) Baca denied that application January 21, 2018, because Spell was an ex-employee of NDOC. (ECF No. 41-1 at 8.)

Smith was transferred to Southern Desert Correctional Center (SDCC) on February 6, 2018. (*See* ECF No. 44-1 at 55.) Another visiting application was submitted in February of 2018, and received by NDOC on February 23, 2018, indicating that Spell and Smith were married. (ECF No. 44-1 at 44; ECF No. 41-1 at 3-4.) SDCC Warden Jerry Howell (who is not a defendant in this case) sent Spell correspondence advising her that her application/request to visit was permanently denied, checking a box for "criminal/arrest/employment history." (ECF No. 41-1 at 2.)

On March 23, 2018, Spell sent a letter to SDCC Warden Howell regarding the permanent denial of visitation from February 26, 2018. She asked that her appeal be re-evaluated. She stated that when she resigned she was not under official investigation and neither she nor Smith had ever been charged in connection with the allegations. (ECF No. 44-1 at 54 -55.)

There is also correspondence dated April 3, 2018, from Warden Jerry Howell at SDCC permanently denying visiting privileges based on a box checked "criminal/arrest/employment history." (ECF No. 44-1 at 53.)  There is another visitation appeal memo with Warden Jerry Howell's recommendation that Spell be denied visitation because she is a former employee, and denied by the deputy director because Plaintiff had previously been denied by the director. (ECF No. 41-1 at 14.)

Finally, there is a denial of visitation from Baca dated April 21, 2018, because Spell was an ex-employee of NDOC. (ECF No. 44-1 at 51.)

**B. Equal Protection Standard**

The parties are in agreement regarding the legal standard governing Plaintiffs' claim.

The Fourteenth Amendment prohibits the denial of "the equal protection of the laws." U.S. Const. amend. XIV, § 1. It "commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (citation and quotation marks omitted); *Hartmann v. Cal. Dept. of Corr. and Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013) (citation omitted).

"To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Furnace v. Sullivan*, 705 F.3d 1021, 2030 (9th Cir. 2013) (citation and quotation marks omitted). Where state action does not implicate a protected class, as is the case here, a plaintiff can establish a "'class of one" equal protection claim by demonstrating that he or she "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir. 2004), *overruled on other grounds by Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008).

There is no absolute constitutional right to prison visitation or to visitation by a particular individual. *See Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 561 (1989) (citation omitted). Instead, visitation is a privilege subject to the discretion of prison authorities, and limitations on

1  visitation may not be arbitrary and must be supported by legitimate penological interests.

2  *See Sandin v. Conner,* 515 U.S. 472, 487 n. 11 (1995); *Evans v. Johnson*, 808 F.2d 1427, 1428

3  (11th Cir. 1987)  (citing *Lynott v. Henderson,* 610 F.2d 340, 342 (5th Cir. 1980)).

4  **C. Analysis**

5      First, Defendants argue that Plaintiffs have not established that they have been treated

6  differently than similarly situated individuals, i.e., that other former employees were granted

7  visitation with an inmate when the former employee was accused of having an improper

8  relationship with the inmate.

9      In their opposition/cross-motion, Plaintiffs do present evidence that they were treated

10 differently than similarly situated individuals. Plaintiffs provide several declarations from inmates

11 at NNCC who were able to have former employees visit. Inmate Robert Jones states that his wife,

12 a former NDOC employee, visits him on a monthly basis. (ECF No. 44-1 at 57.) Inmate Desmond

13 Stewart's mother, who is also a former NDOC employee, also is able to visit him. (ECF No. 44-1

14 at 58.) Inmate Jason Taylor previously received a write up for "compromising ex-employee" and

15 subsequently had visits approved with a former employee. (ECF No. 44-1 at 59.) Inmate Damon

16 Davis was placed under investigation for allegedly being in a relationship with Dreana Sweeny.

17 He was never charged. His visiting requests were denied, and then Jackie Crawford told them that

18 visitation would be approved if they were married. He subsequently married Ms. Sweeny, and

19 their visits were approved. (ECF No. 44-1 at 61.)

20     Inmate Davis' scenario is most comparable to Plaintiffs: both were alleged to have been

21 under investigation for being involved in relationships with employees and were denied visitation

22 when the employee no longer worked for the prison. The difference is that when Davis married

23 the former employee, he was allowed visitation, while Spell and Smith were not.

Defendants argue that this does not show a similar situation because it does not show there were persons with the same allegations of misconduct as Spell and with a similar job description as Spell, or that it involved the same warden or institution ; however, they do not explain why this information is relevant to the court's inquiry.

Second, Defendants argue that the equal protection claim fails because the determination to deny Spell's visitation application was reasonably based on Spell's prior relationship with Smith during her employment with NDOC.

Plaintiff's evidence that other former employees and inmates under investigation for being in an improper relationship were granted visitation creates a genuine dispute of material fact as to whether the denial of visitation was reasonably based on Spell's prior relationship with Smith because this tends to show the decision to deny Spell and Smith visitation was arbitrary. In addition, Plaintiffs present evidence that this was not a rational basis for denying visitation because the investigation was never completed. So there was no conclusion that Spell and Smith were in fact in an improper relationship while Spell was employed at NDOC, and neither Spell nor Smith were ever charged in connection with the investigation. Plaintiffs further present evidence that the reasons given for denial of visitation were former employment and Spell's previous record, and the investigation for the alleged relationship was not presented to Spell until after this litigation commenced which raises a question surrounding the reason for denying visitation. Finally, Plaintiffs point out that Baca did not follow AR in issuing the initial visitation denials because the regulation provides that Baca should have provided a recommendation, but the final determination should have come from the director, and they contend this shows that the denials were arbitrary.

Moreover, Defendants do not provide evidence as to why denying visitation to Spell, either because she was a former employee, had a former record, or was under investigation (but never

charged) for having a relationship with Spell during her employment, has a rational connection with a legitimate penological interests. In fact, Defendants do not even cite the legitimate penological interest that supports the decision to deny Spell and Smith visitation privileges. They assert that Spell was under investigation for being in an improper relationship with Smith in violation of prison policy when she resigned, but they do not actually provide evidence to explain why this is a legitimate basis for denying the visitation requests.

Prison officials must provide *evidence* "that the interests they have asserted are the actual bases for their" decision or policy. *See Swift v. Lewis*, 901 F.2d 730, 732 (9th Cir. 1990) ("prison officials must at least produce some evidence that their policies are based on legitimate penological justifications"). So while courts are to afford deference to the judgment of prison officials, *Overton v. Bazzetta,* 539 U.S. 126, 132 (2003), it only does so "after prison officials have put forth such evidence[.]" *Walker v. Sumner,* 917 F.2d 386, 386 (9th Cir. 1993).

In other cases where courts have concluded there was no equal protection violation when an ex-employee was denied visitation with an inmate, the prison officials have provided evidence to support the conclusion that the decision was reasonably connected to a legitimate penological interest.

In *Dixon v. Cain,* Case No. 14-0451-JJB-RLB, 2015 WL 13309343 (M.D. La Sept. 2, 2015), report and recommendation adopted, 2015 WL 13439759 (Sept. 21, 2015),  the defense submitted an affidavit from the warden that ex-employees have "knowledge of institutional policies and procedures" and so are generally prohibited from visiting inmates for a period of years in order to "prevent the introduction of contraband[.]" *Dixon*, 2015 Wl 13309343 at * 5.  In *Dixon* there was also an investigative report prepared when the proposed visitor sought to visit the inmate that revealed she engaged in a non-professional relationship with the inmate's family and possibly

1    the inmate. *Dixon* also included evidence that the former employee had written letters to the inmate

2    and brought contraband to him. *Id*. Based on these facts, the warden concluded that she presented

3    a security risk to the institution. *Id*.

4          In *Deeds v. Helling*, Case No. 3:07-cv-00060-ECR-VPC, 2009 WL 803130 (D. Nev.

5    Feb. 19, 2009) (which involved a due process and  not an equal protection challenge) the court

6    found that the denial of visitation with a former employee had a rational basis in safety and security

7    concerns where the defense presented evidence that inmates could be compromised by former

8    employees, citing a then-recent incident where an inmate escaped after being compromised by a

9    former employee. *Deeds*, 2009 WL 803130 at * 9

10         In *Welz v. Degregorio*, 646 F.Supp. 522, 523 (E.D. Pa. 1986), the warden presented an

11   affidavit explaining specific concerns presented with allowing former employees to visit inmates

12   including the introduction of contraband and security breaches given the former employee's

13   knowledge of security procedures. *Welz*, 646 F.Supp. at  523.

14         The court can  appreciate why visitation by a former employee *might*  hypothetically be

15   denied for legitimate reasons: the former employee might have intimate knowledge of security of

16   the prison or internal functioning that could be detrimental to prison staff and inmates if conveyed

17   to the inmate being visited; or, if there was a history of passing contraband between the visitor and

18   the inmate sought to be visited. In such a case, the court might find that a denial of visitation is

19   reasonably related to legitimate penological interests of safety and security. Here, though, the only

20   facts Defendants present are that Spell was a former NDOC employee, and when she resigned she

21   was under investigation for being in an improper relationship with Smith.

22         The fact that Spell was a former employee, without more, is insufficient to justify denial

23   of visitation. This conclusion is supported by the fact that AR 710 itself indicates that former

1    employees are not necessarily denied visitation rights just because of their prior employment

2    status. Therefore, to show that Spell's denial was not arbitrary, the prison should be required to

3    connect the denial to a specific, legitimate penological interest.

4        Similarly, the fact that Spell was accused of being engaged in an improper relationship

5    with Smith while Spell was employed by NDOC is also insufficient. Defendants fail to provide

6    any evidence to explain why being under investigation for being in a relationship justifies

7    prohibiting her from visiting Smith. There is no evidence to support, for example, that alleged

8    violation of policy makes it any more likely that she would violate another policy, or that Spell

9    and Smith were engaged in any nefarious behavior during this alleged relationship that might pose

10   a safety and security risk to the prison.

11       Finally, Defendants argue that the "class-of-one" theory should not be applied here because

12   Baca was exercising his discretionary authority under prison regulations in denying Spell's

13   visitation application, relying on *Enguist v. Oregon Department of Agriculture*, 553 U.S. 591, 603

14   (2008). It seems that the Ninth Circuit foreclosed this argument when it reversed District Judge

15   Du's dismissal of the equal protection claim that was predicated on *Enguist*.

16       In sum, the court finds that genuine disputes as to material facts as to why Smith and Spell

17   were denied visitation and whether the denial of visitation is supported by a legitimate penological

18   interest. These disputed material facts preclude the entry of summary judgment in favor of either

19   party.

20       The court notes that Defendants argue that Plaintiffs' cross-motion should be denied

21   because it only contains arguments against Defendants' motion for summary judgment and not for

22   granting the cross-motion; it does not identify material facts not in dispute. The court is required

23   to liberally construe filings by pro se parties, and does so here. Plaintiffs' opposition and cross-

1  motion does contain arguments as to why Defendants' motion should be denied, but those

2  arguments can also be interpreted as their arguments as to why Plaintiffs' cross-motion should be

3  granted. Their briefing asserts that there are genuine disputes as to material facts, but also that

4  there are undisputed facts. It is the admission that there are genuine disputes as to material facts

5  that is fatal to Plaintiffs' cross-motion.

6  **D. Qualified Immunity**

7      "Qualified immunity protects government officers 'from liability for civil damages insofar

8  as their conduct does not violate clearly established statutory or constitutional rights of which a

9  reasonable person would have known.'" *Maxwell c. City of San Diego,* 708 F.3d 1075, 1082 (9th

10  Cir. 2013) (quoting *Harlow v.* Fitzgerald, 457 U.S. 800, 818 (1982)). The qualified immunity

11  analysis consists of two steps: (1) viewing the facts in the light most favorable to the plaintiff, did

12  the defendant violate the plaintiff's rights; and (2) was the right clearly established at the time the

13  defendant acted. *See Castro v. County of Los Angeles*, 833 F.3d 1060,1 066 (9th Cir. 2016) (en

14  banc), *cert. denied.*, 137 S.Ct. 8331 (2017).

15      "A clearly established right is one that is sufficiently clear that every reasonable official

16  would have understood what he is doing violates the right." *Mullinex v. Luna*, 136 S.Ct. 305, 308

17  (2015) (internal quotation marks and citation omitted). Clearly established law should not be

18  defined "at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011).

19      Defendants argue that they are entitled to qualified immunity because it was not clearly

20  established that a denial of visitation under these circumstances violates the equal protection

21  clause.

22      First, viewing the evidence in the light most favorable to Plaintiffs, Defendants violated

23  the equal protection clause by arbitrarily treating Plaintiffs differently than similarly situated

individuals. Spell was under investigation for being an improper relationship when she resigned, and was subsequently denied visitation with Smith, even after they were married. Another inmate in a similar scenario was granted visitation with a former-employee after they were married. With no evidence to support that Spell and Smith were denied visitation in connection with a legitimate penological purpose, the fact finder could conclude that the decision was arbitrary and violative of the Equal Protection Clause.

Second, Defendants admit that even if there is not a specific constitutional right to visitation, individuals are protected under the Equal Protection Clause from arbitrary state action. Therefore, they acknowledge that the law concerning Plaintiffs' claims was in fact clearly established: if the decision to limit visitation was arbitrary, *i.e.*, not rationally connected to a legitimate penological interest, it violates the Equal Protection Clause. The court cited various cases above that found no violation of equal protection when visitation was denied to a former prison employee where there was evidence of a rational connection between the decision to deny visitation and a specified legitimate penological interest. Therefore, the converse is also clearly established: in the absence of a rational connection between the reason for denial of visitation and a specified legitimate penological interest there is a violation of the Equal Protection Clause. In sum, the court finds the law was clearly established. Therefore, qualified immunity is not appropriate.

**E. Official Capacity Damages**

Defendants' motion argues that summary judgment should be granted insofar as Plaintiffs seek to recover damages against them in their official capacities. The court agrees. *See Bank of Lake Tahoe v. Bank of Am.*, 318 F.3d 914, 918 (9th Cir. 2003).

///

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order as follows:

(1) **DISMISSING WITHOUT PREJUDICE** the John Doe NDOC Deputy Director under Federal Rule of Civil Procedure 4(m);

(2) Defendants' motion for summary judgment (ECF No. 40) should be **GRANTED** insofar as Plaintiffs seek to recover monetary damages against Defendants in their official capacities, but should otherwise be **DENIED;**

(3) Plaintiff's cross-motion for summary judgment (ECF No. 44) should be **DENIED.**

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED: September 24, 2019.

_William G. Cobb_
William G. Cobb
United States Magistrate Judge